IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Charles R. Turner,  )
    Plaintiff,  )
  )
v.  )  1:10cv871 (CMH/JFA)
  )
Dr. Stephen M. Herrick, Ph.D., et al.,  )
    Defendants.  )

## MEMORANDUM OPINION

Charles R. Turner, who is civilly committed to the Virginia Center for Behavioral Rehabilitation (VCBR) and proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging violation of his constitutional rights due to a delay in treatment for a hernia. Defendants Nurse Abernathy and Dr. Stephen M. Herrick filed a joint Motion to Dismiss and/or Motion for Summary Judgment. Defendant Dr. DiCocco also filed a Motion for Summary Judgment. Turner was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed a response, as well as two motions for counsel, a motion to compel, and a motion for hearing. For the reasons that follow, defendant Nurse Abernathy's Motion to Dismiss, defendant Dr. Stephen Herrick's Motion for Summary Judgment, and defendant Dr. DiCocco's Motion for Summary Judgment will be granted. Plaintiff's motions will thus be denied as moot.

### I. Background

The events giving rise to Turner's complaint occurred at VCBR, where he was committed on October 19, 2009 because he had been determined to be a sexually violent predator. Compl. at 3, ECF No. 1; Herrick/Abernathy Mem. in Supp. at 1, ECF No. 18-1; see Va. Code § 37.2-900 (defining "sexually violent predator" as "any person who (i) has been convicted of a sexually

violent offense, or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial pursuant to § 19.2-169.3; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts."); see also § 37.2-909(A) ("Any respondent committed pursuant to this chapter shall be placed in the custody of the Department for control, care, and treatment until such time as the respondent's mental abnormality or personality disorder has so changed that the respondent will not present an undue risk to public safety.")

Turner states that he had been in the custody of the Virginia Department of Corrections since June of 2009 and had been suffering with a hernia since then. He arrived at VCBR on October 19, 2009 and states that he was told by a doctor that he had a hernia that required surgery. See Compl. at 4, ECF No. 1. Dr. DiCocco, the doctor who examined Turner, noted that Turner suffered from cirrhosis of the liver (advanced liver disease), chronic Hepatitis C, and esophageal varices (which had been banded by a Gastroenterologist and from which Turner had an active bleeding episode since being in the custody of the Virginia Department of Corrections). See DiCocco Aff. at 2-3, ECF No. 21-1. Dr. DiCocco determined that Turner therefore had a "very substantial risk for bleeding and sudden death." Id. He also noted that Turner had experienced two heart attacks, a history of placement of coronary stents to keep coronary arteries open, and a hip replacement. Id. at 3. Turner was taking Plavix and aspirin, which decreased the risk of heart attack "only at the expense of increasing bleeding risk in this patient with liver disease." Id.

Dr. DiCocco also noted that Turner had "a history of a right indirect inguinal hernia, of longstanding duration, and untreated while [Turner] was in the Virginia Department of Corrections." Id. Dr. DiCocco explains

2

> My own initial physical examine revealed his inguinal hernia to be indirect and reducible (NOT strangulated or incarcerated). This means that the gentle pressure of a finger could push the hernia back into the inguinal canal/abdominal cavity and that NO loops of bowel were entrapped in the hernia...Mr. Turner reported no pain...Thus, Mr. Turner's right inguinal hernia was very clearly NOT a medical or surgical urgency or emergency.

Id. at 3-4. Dr. DiCocco also determined that Turner's "immediate clinical need was for re-evaluation of his liver function, status, and esophageal varices." Id. at 4. Turner was therefore sent to a Gastroenterologist. Id.

When Dr. DiCocco examined Turner in December 2009, he could not feel the hernia and Turner explained that the hernia had not "popped out" on that day. Dr. DiCocco ordered a general surgery consult for evaluation of Turner's hernia and the need to repair it. Over the next few months, Dr. DiCocco also ordered numerous tests and consults to help evaluate Turner's risks in surgery. Id. at 5. When Turner was evaluated by an outside surgeon, the surgeon stated that Turner would need cardiac clearance before surgery was attempted. Id. at 8. A cardiologist was therefore consulted, who determined that Turner had an acceptably low risk in surgery. Id. at 8-9. Turner had surgery for his hernia on June 4, 2010, which was successful. See Resp. at 18, ECF No. 39.

Turner filed numerous grievances relating to his hernia. See Compl. at 3, ECF No. 1. Turner talked to Dr. Stephen Herrick, the acting director of VCBR who is a clinical psychologist, about his hernia. In that role, Dr. Herrick "had no direct clinical responsibility for the residents at VCBR" because his role was "purely administrative in nature." See Herrick Aff. at 1, ECF No. 18-2. Accordingly, he depended on the Chief of Staff (who is a medical doctor) to oversee all treatment functions. Id. at 6.

3

## II. Nurse Abernathy

### A. Standard of Review: Motion to Dismiss

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When determining whether a motion to dismiss should be granted, the alleged facts are presumed true and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit,

the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

B. Merits

District courts have a duty to construe pleadings by pro se litigants liberally, however, a pro se plaintiff must nevertheless allege a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). To state a cause of action under § 1983, a plaintiff must allege facts indicating plaintiff was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988). Thus, each named defendant must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against him.

Turner has not stated sufficient facts to demonstrate that Nurse Abernathy had personal knowledge of and involvement in the alleged violations of his constitutional rights. Nurse Abernathy states that she "was not involved in the treatment of Charles Turner's right inguinal hernia, nor did [she] assist in his pain management prior to his surgery in June 2010." See Abernathy Aff. at 2, ECF No. 18-3. She further states that she reviewed the complaint in this case, and "[e]very reference to a nurse taking an action or receiving information...is not a reference to [her]." Id. Turner has not provided any evidence to refute these statements.[1] Although he "categorically den[ies]" statements made in the defendants' motions, he has not provided any evidence to support his position. Such conclusory allegations fail to state a claim

---

[1] Turner contests Abernathy's statement that one of only two interactions she had with Turner was when she gave him a flu shot by stating that Nurse Adkins and "another nurse" gave him the flu shots, "most definetly [sic] not Nurse Abernathy." See Resp. at 14, ECF No. 39. He also states that Nurse Abernathy, who "actually ran the Medical Dept," did not seem concerned about his pain. Id. at 22.

upon which relief can be granted. See Ashcroft, 129 S. Ct. at 1949. Therefore, the Motion to Dismiss will be granted as to the claims against Nurse Abernathy.

### III. Dr. Stephen Herrick and Dr. DiCocco

A. Standard of Review: Motion for Summary Judgment

In reviewing the Motion for Summary Judgment by defendants, courts must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is made and supported . . . [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

B. Standard of Care: Civilly Committed Sex Offenders

Turner's allegations were originally construed as a claim of inadequate medical care under the Eighth Amendment's standard, which finds liability if a defendant exhibited deliberate indifference to a prisoner's serious medical needs. It is now clear, however, that Turner is not a

prisoner serving a criminal sentence. Rather, he is civilly committed because he has been determined to be a sexually violent predator as defined in Va. Code § 37.2-900.

The Supreme Court has upheld statutes (like Va. Code § 37.2-900) that provide for the involuntary commitment of persons deemed to be dangerous sexual offenders "when (1) the confinement takes place pursuant to proper procedures and evidentiary standards, (2) there is a finding of dangerousness either to one's self or to others, and (3) proof of dangerousness is coupled ... with the proof of some additional factor, such as a mental illness or mental abnormality." See Kansas v. Crane, 534 U.S. 407, 409 (2002) (citations and internal quotations omitted). For civil commitment under such statutes to be constitutional, "there must be proof of serious difficulty in controlling behavior...and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Id. at 413. The Court emphasized "the constitutional importance of distinguishing a dangerous sexual offender subject to civil commitment from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." See Crane, 534 U.S. at 412 (citation and internal quotations omitted) ("That distinction is necessary lest 'civil commitment' become a 'mechanism for retribution or general deterrence' — functions properly those of criminal law, not civil commitment."). Virginia's statute satisfies all of these requirements. See Shivaee v. Virginia, 613 S.E.2d 570, 576 (Va. 2005).

Here, both of the remaining defendants recognize that a person who has been civilly committed as a sexually violent predator in Virginia may be entitled to a higher standard of care than the deliberate indifference standard applicable to convicted prisoners and pre-trial detainees.

Specifically, the defendants cite to the professional judgment standard applicable to involuntarily committed psychiatric patients. See Youngberg v. Romeo, 457 U.S. 307 (1982); Patten v. Nichols, 274 F.3d 829 (4th Cir. 2001); see also Herrick Mem. in Supp. at 5, ECF No. 18-1; DiCocco Mem. in Supp. at 14, ECF No. 21. Dr. Herrick asserts that Turner's claims against him should be evaluated under the professional judgment standard and dismissed, whereas Dr. DiCocco argues that the deliberate indifference standard is appropriate, but asserts that he is entitled to summary judgment regardless of which standard applies.

In Youngberg, the Supreme Court explained that "adequate food, shelter, clothing, and medical care" are "the essentials of the care that the State must provide" to a person who is subject to involuntary civil commitment due to his mental retardation. 457 U.S. at 324. When determining how to evaluate claims of constitutionally inadequate care in these circumstances, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised." Id. at 321. Significantly, the Court emphasized that "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at 321-23 (explaining that "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.") In rejecting the Eighth Amendment's standard of deliberate indifference, the Court reasoned that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id. at 321-322.

The Fourth Circuit cited Youngberg when it held that a psychiatric patient who died while she was involuntarily committed to a hospital had the constitutional right to adequate

8

medical care and that the claims brought by her Estate should be evaluated under the professional judgment standard. See Patten v. Nichols, 274 F.3d at 837 n.3, 838 ("Although Youngberg involved involuntarily committed mentally retarded patients, its standard is routinely applied to cases involving involuntarily committed mentally ill patients.") (citations omitted). The court specifically explained that the deliberate indifference standard that is applicable to pre-trial detainees' claims of inadequate medical care was not the correct standard to evaluate claims of involuntarily committed psychiatric patients even though both claims arise under the Fourteenth Amendment. Id. at 838 ("Applying the deliberate indifference standard to [an involuntarily committed psychiatric patient's] claim would be giving involuntarily committed patients the same treatment as that afforded to convicted prisoners, a result the Youngberg Court specifically condemned.").

It is clear that the professional judgment standard must be used to evaluate claims of inadequate medical care brought by a person who is a civilly committed sexually violent predator under Virginia law. In Crane, the Supreme Court emphasized the constitutional significance of including a requirement of a finding of mental abnormality in statutes that provide for the civil commitment of persons deemed to be sexually violent predators. See Crane, 534 U.S. at 409. This requirement demonstrates that civilly committed sexually violent predators are more similar to civilly committed psychiatric patients than incarcerated prisoners or pre-trial detainees, and "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-22. Accord Patten v. Nichols, 274 F.3d at 840 ("[E]ven though pre-trial detainees and involuntarily committed patients both look to the Fourteenth Amendment for protection and neither group may be punished (in the Eighth Amendment sense),

it can hardly be said that the groups are similarly situated[, and the] differences in the purposes for which the groups are confined and the nature of the confinement itself are more than enough to warrant treating their denial-of-medical-care claims under different standards").

Other courts have cited to Youngberg when evaluating civilly committed sex offenders' claims of inadequate medical care. In Hubbs v. County of San Bernardino, the court held that "[u]nder the Fourteenth Amendment's due process clause, the State must provide adequate medical care to [sexually violent predators (SVPs)] and other involuntarily civilly committed individuals." See Hubbs v. County of San Bernardino, 538 F. Supp. 2d 1254, 1265 (C.D. Cal. 2008) (citing Youngberg, 457 U.S. at 324; Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1188-89 n.9 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003)). Nevertheless, the court relied on the deliberate indifference standard to decide that the plaintiff had stated a claim against the defendants, reasoning that "SVPs must, at a minimum, be afforded the rights afforded prisoners confined in a penal institution[, so] the Eighth Amendment still provides a floor for the level of protection that SVPs must receive under the Fourteenth Amendment." Id. at 1266 ("[B]ecause the contours of the Eighth Amendment are more defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied.").

In Cameron v. Tomes, the plaintiff had been involuntarily committed to the Massachusetts Treatment Center for the Sexually Dangerous because he had been convicted of two separate violent sexual assaults and had thereafter been adjudged to be a sexually dangerous person. See Cameron v. Tomes, 783 F. Supp. 1511, 1514 (D. Mass. 1992) (noting that the plaintiff was committed to the Center "for a term of one day to life" and that his time at the Center is applied to his criminal sentence). The plaintiff brought an action for equitable relief alleging that the defendants violated his constitutional rights by failing to provide adequate

treatment at the Center. The court cited <u>Youngberg</u> when explaining the rights of involuntarily committed persons, and concluded that "although [the plaintiff] may not have a right to any particular treatment—including psychological treatment—he does have a right to treatment that is based, at a minimum, on the exercise of professional judgment." <u>Id.</u> at 1515-1516 ("If [the plaintiff] can show that the Center was deliberately indifferent to his mental health needs while he was involuntarily committed for treatment—not punishment—then *a fortiori* he has shown that the Center violated the <u>Youngberg</u> standard [] because persons 'who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'") (citing <u>Youngberg</u>, 457 U.S. at 322).

C. Dr. Stephen Herrick and Dr. DiCocco

It is clear that neither Dr. Herrick nor Dr. DiCocco provided Turner with constitutionally inadequate care because it is evident that both of these defendants exercised professional judgment. <u>See Youngberg</u>, 457 U.S. at 321. Dr. Herrick reasonably relied on the judgments of professional medical doctors, which demonstrates that he was exercising his professional judgment as a person who is not himself a medical doctor. Without question, Dr. Dicocco's decision to consult with many other healthcare professionals and ensure that Turner's risk in surgery was acceptably low was not "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [he] actually did not base the decision on such a judgment." <u>Id.</u> at 321-23. This decision in fact demonstrates the efforts Dr. DiCocco made to ensure the safety and welfare of Turner, which clearly demonstrates that he exhibited

professional judgment in making these choices. Therefore, Dr. Herrick and Dr. DiCocco's motions for summary judgment will be granted.

## IV. Conclusion

For the reasons stated above, defendant Nurse Abernathy's Motion to Dismiss, defendant Dr. Stephen Herrick's Motion for Summary Judgment, and defendant Dr. DiCocco's Motion for Summary Judgment will be granted.[1] Turner's two motions for counsel, motion to compel, and motion for hearing will be denied as moot. An appropriate Order and judgment shall issue.

Entered this 29th day of July 2011.

Alexandria, Virginia

/s/
Claude M. Hilton
United States District Judge

---

[1] Because defendants prevail on the merits, the Court declines to address any issues of qualified immunity. See Wilson v. Layne, 526 U.S. 603, 609 (1999) (establishing two-prong qualified immunity test, where courts must first determine whether the plaintiff alleged an actual constitutional deprivation).